1

2

3

4

5

Chad Conelly (SBN 022394)
CONELLY LAW GROUP PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road, Suite 103
Scottsdale, Arizona 85250
Telephone: 480-268-2658
cc@arizonalegal.com
*Attorneys for Plaintiff*

6

7

8

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

9

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| Samantha Hooper, | Case |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Howard Enterprises, Inc. d/b/a Howard Air; Julie Howard and Kevin Howard, husband and wife; Chris Jacobs and Jane Doe Jacobs; Andrea Curran and John Doe Curran; John Does 1-10; Jane Does 1-10; and ABC Entities 1-10; | |
| Defendants. | |

19

20

Plaintiff alleges as follows:

## NATURE OF THE ACTION

21

22

23

24

1.      Plaintiff Samantha Hooper is seeking judgment, relief and damages under the Fair Labor Standards Act and the Arizona Wage Act based on the unlawful conduct of her former employer Howard Enterprises, Inc. d/b/a Howard Air ("Howard Air") where she worked as a dispatcher and parts & warranty coordinator and sold products and services.

25

26

27

2.      Howard Air unlawfully failed to pay Ms. Hooper overtime during some weeks she worked over 40 hours, retaliated against her for reporting unlawful conduct, and constructively discharged her.

28

**PARTIES, VENUE, AND JURISDICTION**

3.      Samantha Hooper is a resident of Maricopa County, Arizona.

4.      Defendant Howard Air is a Arizona corporation authorized to do business in Arizona.

5.      At all times relevant to the allegations in this Complaint, Howard Air conducted business in Maricopa County, Arizona.

6.      At all times relevant to the allegations in this Complaint, Howard Air was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), as to Ms. Hooper.

7.      Defendants Julie Howard and Kevin Howard are husband and wife who, upon information and belief are, and at all times relevant to this Complaint were, residents of Maricopa County, Arizona.

8.      Upon information and belief, at all times relevant to the allegations in this Complaint, Julie Howard was an owner and employee of Howard Air.

9.      Upon information and belief, at all times relevant to the allegations in this Complaint, Julie Howard acted directly or indirectly in the interest of Howard Air in relation to its employees, including hiring and firing employees, exercising day-to-day authority and control over the terms and conditions of employment, and exercising control over aspects of Howard Air's business. As such, Ms. Howard is individually liable as an employer under 29 U.S.C. § 203(d) for back wages, liquidated damages and other damages owed to Ms. Hooper.

10.     The marital community of Julie Howard and Kevin Howard is liable for the acts and omissions of Ms. Howard as alleged in this Complaint.

11.     Defendants Chris Jacobs and Jane Doe Jacobs are husband and wife who, upon information and belief are, and at all times relevant to this Complaint were, residents of Maricopa County, Arizona.

12.     Upon information and belief, at all times relevant to the allegations in this Complaint, Chris Jacobs was the General Manger and an employee of Howard Air.

13.     Upon information and belief, at all times relevant to the allegations in this Complaint, Chris Jacobs acted directly or indirectly in the interest of Howard Air in relation to

2

1    its employees, including hiring and firing employees, exercising day-to-day authority and

2    control over the terms and conditions of employment, and exercising control over aspects of

3    Howard Air's business. As such, Mr. Jacobs is individually liable as an employer under 29

4    U.S.C. § 203(d) for back wages, liquidated damages and other damages owed to Ms. Hooper.

5            14.    The marital community of Chris Jacobs and Jane Doe Jacobs is liable for the acts

6    and omissions of Ms. Howard as alleged in this Complaint.

7            15.    Defendants Andrea Curran and John Doe Curran are wife and husband who,

8    upon information and belief are, and at all times relevant to this Complaint were, residents of

9    Maricopa County, Arizona.

10           16.    Upon information and belief, at all times relevant to the allegations in this

11   Complaint, Andrea Curran was the Human Resources director and an employee of Howard

12   Air.

13           17.    Upon information and belief, at all times relevant to the allegations in this

14   Complaint, Ms. Curran acted directly or indirectly in the interest of Howard Air in relation to

15   its employees, including hiring and firing employees, exercising day-to-day authority and

16   control over the terms and conditions of employment, and exercising control over aspects of

17   Howard Air's business. As such, Ms. Curran is individually liable as an employer under 29

18   U.S.C. § 203(d) for back wages, liquidated damages and other damages owed to Ms. Hooper.

19           18.    The marital community of Andrea Curran and John Doe Curran is liable for the

20   acts and omissions of Ms. Curran as alleged in this Complaint.

21           19.    John Does 1-10; Jane Does 1-10; and ABC Entities 1-10 are fictitiously named

22   Defendants who have, or may have, liability for some or all events giving rise to this litigation.

23   If Ms. Hooper identifies any other individuals or entities that are liable to her, she will amend

24   this Complaint to name them as Defendants.

25           20.    At all times relevant to the allegations in this Complaint, Howard Air employed

26   employees engaged in commerce or in the production of goods for commerce or in handling,

27   selling, or otherwise working on goods or materials that have been moved in or produce for

28   commerce by any person.

21.     At all times relevant to the allegations in this Complaint, Howard Air has been an "enterprise" as defined in the FLSA, 29 U.S.C. § 203(r), with business activities that are related and performed through unified operation or common control for a common business purpose.

22.     At all times relevant to the allegations in this Complaint, Howard Air has been engaged in the operation of an enterprise whose annual gross volume of sales made or business done was not less than $500,000. As such, Howard Air is and has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s).

23.     This Court has jurisdiction over Ms. Hooper's claims under 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction under 28 U.S.C. § 1367 over her state law claims.

24.     This Court has personal jurisdiction over the parties.

25.     Venue in this Court is proper.

## GENERAL ALLEGATIONS

26.     Ms. Hooper realleges every allegation set forth previously in this Complaint as if set forth in this paragraph.

27.     Ms. Hooper worked for Howard Air from April 16, 2019 to September 8, 2020.

28.     Ms. Hooper's duties included dispatching, selling Howard Air products and services, and assisting in coordinating parts & warranty work.

29.     As a dispatcher, Ms. Hooper maintained the Service Technicians' daily schedules and dispatched the technicians as service calls were completed; scheduled return trips with customers when parts came in; maintained the on-call schedule for service technicians; maintained the customer database with current information; assisted the accounting department with billing reviews; communicated with customers about scheduling and lead-times; and sold Howard Air products and services to customers.

30.     When assisting with parts & warranty coordination, Ms. Hooper ordered parts to maintain inventory for the warehouse and technicians' van inventory; ordered parts for

4

emergency service requests and coordinated delivery of parts; called to schedule return repair visits with customers; and filed warranty claims on parts covered by manufacturer warranty on behalf of the company.

31.     Ms. Hooper worked at the Howard Air office located on Cave Creek Road location, and occasionally at the Black Canyon location on Saturdays, approximately 40 to 50 hours each week (not including her on-call work).

32.     Ms. Hooper was also on call about every other week, sometimes more frequently.

33.     When on call, Ms. Hooper worked from home, during which time she had to be available to take customer calls from approximately 5:00pm to 7:00am (times sometimes changed).

34.     When Ms. Hooper worked in the office, Howard Air paid her on an hourly basis at the rate of $20.00 per hour (increased to $20.50) and commission on sales.

35.     When Ms. Hooper worked on call from home remotely, Howard Air paid her $450 per week, regardless of how many hours she worked.

36.     Around early June 2020, Ms. Hooper reported to her manager, Craig Tuffelmire, that Howard Air was not paying her properly for her on-call work, including not paying her overtime pay as required by law.

37.     Ms. Hooper reported it to Mr. Tuffelmire because Ms. Hooper understood Mr. Tuffelmire was her direct supervisor and the person to whom she was supposed to report such issues.

38.     In response, Mr. Tuffelmire told Ms. Hooper he would speak with Howard Air management about it and get back to her.

39.     Mr. Tuffelmire never followed up with Ms. Hooper on the issue.

40.     Mr. Tuffelmire's employment with Howard Air ended on or about June 12, 2020.

41.     Ms. Hooper's manager became Cliff Campbell.

42.     On June 30, 2020, a Howard Air janitor physically touched Ms. Hooper in a sexual manner without her consent.

43.     Ms. Hooper immediately reported the incident to Mr. Campbell and said she did not want to be left alone with the janitor again.

44.     Ms. Hooper reported it to Mr. Campbell because Ms. Hooper understood Mr. Campbell was her direct supervisor and the person to whom she was supposed to report such issues.

45.     Mr. Campbell told Ms. Hopper the janitor was likely going to be working at a different building and that she should not worry about him being around much longer.

46.     The janitor continued working in Ms. Hooper's building.

47.     Neither Mr. Campbell nor anyone else at Howard Air took any action to address her complaint and concern about the janitor.

48.     Art Schieffer became Ms. Hooper's manager around the beginning of July 2020.

49.     Because no one had followed up with Ms. Hooper about the overtime pay complaint she made in June 2020, on July 13, 2020, Ms. Hooper emailed her manager, Mr. Schieffer, one of the owners of Howard Air, Julie Howard, and the General Manager, Chris Jacobs, to follow up on her complaint, suggest an alternative pay structure, reiterate her dedication to Howard Air, and request they address the issue.

50.     Around mid-August 2020, Ms. Hooper informed another employee that she was filing a complaint with the labor board concerning Howard Air's failure to pay her overtime in connection with her on-call hours.

51.     That employee notified management Ms. Hooper was filing a complaint with the labor board concerning Howard Air failing to pay her overtime in connection with her on-call hours.

52.     On August 28, 2020 – *after* Howard Air management learned Ms. Hooper was filing a complaint with the labor board about its unlawful overtime pay practices - Ms. Hooper was told to report to Howard Air's Black Canyon location to meet with Ms. Howard and Mr. Jacobs.

1    53.    Ms. Hooper went there immediately and was brought into a meeting with Ms.

2    Howard, Mr. Jacobs, and Andrea Curran (Human Resources). (Ms. Howard, Mr. Jacobs and

3    Ms. Curran are collectively referred to in this Complaint as the "Individual Defendants").

4    54.    The Individual Defendants first addressed the overtime pay issue by telling Ms.

5    Hopper that Howard Air was following all laws concerning her pay.

6    55.    Next, they told Ms. Hooper they were stripping away the on-call part of her job –

7    she would no longer be permitted to earn money working on call.

8    56.    Next, they told Ms. Hooper she would no longer be permitted to work on

9    Saturdays – before that, she would rotate with others to work Saturdays, which gave her more

10   hours and, hence, more earnings.

11   57.    Next, they told Ms. Hooper they were giving her a formal disciplinary writeup

12   because she had allegedly engaged in "uncomfortable dialogue" with another employee.

13   58.    They told Ms. Hooper if she ever again engaged in such dialogue with another

14   employee, Howard Air would terminate her.

15   59.    Ms. Hooper – unaware of what they were referring to – asked the Individual

16   Defendants what they meant by "uncomfortable dialogue" and what she had allegedly said to

17   another employee for which they were disciplining her.

18   60.    Mr. Jacobs responded that Ms. Hooper told another employee she was going to

19   the labor board to file an overclaim complaint against Howard Air for the hours she was

20   working on-call.

21   61.    They handed Ms. Hooper a document titled "Employee Job in Jeopardy," told

22   her she needed to sign it, and ended the meeting.

23   62.    None of the Individual Defendants said anything about Ms. Hooper's prior

24   sexual harassment complaint – Howard Air took no action whatsoever to address the

25   harassment and assault to which she was subjected, which Ms. Hooper felt remained a threat

26   to her safety.

27   63.    Ms. Hooper felt Howard Air was retaliating against her and harassing her for

28   complaining about sexual harassment; requesting Howard Air address her concern about the

1  co-worker who assaulted her; making internal complaints about Howard Air not paying her

2  properly for the overtime she worked; and informing a co-worker she was filing a formal

3  complaint with the labor board about Howard Air's unlawful overtime pay practice.

4      64.    Ms. Hooper understood from her meeting with the Individual Defendants, and

5  the formal discipline they gave her, that they and Howard Air were prohibiting her from

6  making any complaints about Howard Air's unlawful practices, including its unlawful refusal

7  to pay her properly for all the overtime she worked.

8      65.    Because of the harassment and retaliation to which Howard Air and the

9  Individual Defendants subjected her, Ms. Hooper resigned on September 8, 2020.

10  **FIRST CAUSE OF ACTION**

11  **(Violation of the Fair Labor Standards Act for Failure to Pay Overtime)**

12      66.    Ms. Hooper realleges every allegation set forth previously in this Complaint as if

13  set forth in this paragraph.

14      67.    Ms. Hooper was a non-exempt employee under the FLSA when she worked for

15  Howard Air.

16      68.    Defendants willfully and repeatedly violated the FLSA, 29 U.S.C. §§ 207 and

17  215(a)(2), by failing to pay Ms. Hooper at rates not less than one and one-half times her

18  regular rate of pay in workweeks when she worked more than 40 hours.

19      69.    Defendants willfully violated the records-keeping requirements of the FLSA, 29

20  U.S.C. §§ 211 and 215(a)(5), by failing to maintain, keep, make available, and preserve records

21  about Ms. Hooper's wages, hours, and other conditions and practices of employment.

22      70.    Defendants' violations of the FLSA were willful in nature.

23      71.    Defendants intentionally, with reckless disregard for their responsibilities under

24  the FLSA, and without good cause, failed to pay Ms. Hooper her proper wages including

25  proper overtime pay.

26      72.    As a result of the FLSA violations, Defendants withheld unpaid overtime

27  compensation from Ms. Hooper.

28

73.     Under 29 U.S.C. § 216(b), Defendants are liable to Ms. Hooper in the amount of her unpaid overtime compensation and an additional equal amount as liquidated damages.

74.     Under 29 U.S.C. § 217, Ms. Hooper is entitled to an injunction against Defendants enjoining and retraining any continued withholding of unpaid overtime compensation due under the FLSA.

75.     Ms. Hooper is entitled to an award of her attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (Retaliation under the Fair Labor Standards Act)

76.     Ms. Hooper realleges every allegation set forth previously in this Complaint as if set forth in this paragraph.

77.     Ms. Hooper engaged in statutorily protected conduct under the FLSA by complaining to her supervisors and Howard Air management that Howard Air was improperly failing to pay her per overtime pay for all the hours she worked over 40 and informing a co-worker she was filing a complaint with the labor board about Howard Air's overtime pay violation, which the co-worker conveyed to Howard Air management.

78.     The Individual Defendants were aware of Ms. Hooper's protected activities identified in Paragraph 77.

79.     Howard Air and the Individual Defendants subjected Ms. Hooper to adverse employment actions because of her protected activities including stripping away duties for which she earned wages, stripping hours from her thereby decreasing her earnings, disciplining her for exercising her right to complain about Howard Air's unlawful failure and refusal to pay her all the overtime she earned, and threatening Ms. Hooper that if she ever raised such issues again, she would be terminated.

80.     By taking the actions stated in Paragraph 79, Howard Air and the Individual Defendants expressly prohibited Ms. Hooper from asserting her rights under the FLSA and threatened to terminate her if she ever did so again.

81.     By taking the actions stated in Paragraphs 79 and 80, Howard Air and the Individual Defendants deliberately created employment conditions that were objectively intolerable to a reasonable person.

82.     By taking the actions stated in Paragraphs 79 and 80, it was reasonably foreseeable to Howard Air and the Individual Defendants that their actions would result in Ms. Hooper's employment coming to an end.

83.     Because of the actions of Howard Air and the Individual Defendants, including those stated in Paragraphs 79 and 80 and their failure to address the sexual harassment issue, Ms. Hooper was compelled to resign.

84.     Howard Air and the Individual Defendants constructively discharged Ms. Hooper.

85.     Because of Howard Air and the Individual Defendants' unlawful actions as stated in this Complaint, Ms. Hooper has suffered substantial losses, including loss of earnings.

86.     Because of Howard Air and the Individual Defendants' unlawful actions as stated in this Complaint, Ms. Hooper has suffered embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

87.     The retaliatory conduct of Howard Air and the Individual Defendants was outrageous and malicious, was intended to injure Ms. Hooper, and was done with reckless indifference to Hooper's protected rights, entitling Ms. Hooper to an award of punitive damages.

88.     Ms. Hooper is entitled to an award of her attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### (Violation of the Arizona Wage Statutes)

89.     Ms. Hooper realleges every allegation set forth previously in this Complaint as if set forth in this paragraph.

90.     Defendants failed to pay Ms. Hooper all the "wages" she earned under 23 A.R.S. § 350 et seq.

91.     Defendants violated 23 A.R.S. § 352 by withholding overtime wages Ms. Hooper earned.

92.     Defendants violated 23 A.R.S. § 353 by failing to pay Ms. Hooper all the overtime wages she earned.

93.     Defendants are each liable to Ms. Hooper for an amount that is treble the amount of her unpaid wages.

## JURY DEMAND

94.     Ms. Hooper requests trial by jury.

WHEREFORE, Ms. Hooper requests the Court enter judgment in her favor against Defendants, and each of them, as follows:

A.     Awarding Ms. Hooper overtime compensation in the amount due for all her time worked more than 40 hours per week at rates not less than one and one-half times her regular rate of pay in workweeks when she worked more than 40 hours, plus pre-judgment and post-judgment interest at the highest legal rate;

B.     Awarding Ms. Hooper liquidated damages in an amount equal to the overtime award, plus pre-judgment and post-judgment interest at the highest legal rate;

C.     Awarding Ms. Hooper treble the amount of her unpaid compensation;

D.     For an order under 29 U.S.C. § 217 permanently enjoining and retraining Defendants, and each of them, from any continued withholding of unpaid overtime compensation due to Ms. Hooper under the FLSA;

E.     For an award of Ms. Hooper's damages for loss of wages, benefits, and promotional opportunities, including an award of back pay and front pay for all lost salary and benefits;

F.     For an award of damages to compensate Ms. Hooper for mental anguish, humiliation, embarrassment, and emotional injury;

G.     For all other damages permissible under the FLSA and the Arizona wage statutes;

H.     For an award of punitive damages;

I.     For an award of reasonable attorneys' fees and the costs of this action;

J.       For pre-judgment and post-judgment interest on all amounts awarded; and

K.       For any other and further relief as the Court deems just and proper.


RESPECTFULLY SUBMITTED: June 30, 2021.

CONELLY LAW GROUP PLLC

*/s/ Chad Conelly*
Chad Conelly
*Attorneys for Plaintiff*

## CERTIFICATE OF FILING

I hereby certify that on June 30, 2021, I electronically transmitted this document to the Clerk's Office using CM/ECF System for filing.


*s/ Chad Conelly*